Zlatka (Lola) CULAR and Louis E. Pappas, Plaintiffs,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Metlife Securities, Inc., Metropolitan Insurance and Annuity Company, Metropolitan Tower Life Insurance Company, Harry Kamen, Ted Athanassiades, Roy C. Albertalli, Phillip Briggs, Larry Brewster, Anthony Cannatella, John J. Creedon, Robert J. Crimmins, Harold Leff, James Madera, Jeffrey G. Slane, George P. Slane, John D. McMahon, Stuart G. Nagler, Robert G. Schwartz, John H. Tweedie, Vito Vitone, Edward Walsh, Curtis H. Barnette, Joan Ganz Cooney, A. Luis Ferre, James R. Houghton, Helene L. Kaplan, George M. Keller, Richard J. Mahoney, Allen E. Murray, John J. Phelan, Jr., John B.M. Place, Hugh B. Price, William S. Sneath, and John R. Stafford, Defendants.

No. 95 Civil 5250(LBS).

United States District Court, S.D. New York.

March 27, 1997.

Quinn, Marantis & Rosenberg, L.L.P., by Timothy C. Quinn, Jr., Bradford D. Conover, White Plains, NY, for Plaintiffs.

Proskauer Rose Goetz & Mendelsohn, L.L.P. by Allen I. Fagin, Bruce Fader, David

I. Goldblatt, New York City, for MetLife Defendants

Proskauer Rose Goetz & Mendelsohn, L.L.P. by Claire P. Gutekunst, New York City, for State Street Defendants.

Adler, Pollock & Sheehan, Inc., by John A. Tarantino, Mark O. Denehy, Providence, RI, for Defendant Vito Vitone.

Folkenflik & Mcgerity by Margaret McGerity, New York City, for Defendant M.S. Peress.

## OPINION & ORDER

SAND, District Judge.

Plaintiffs Zlatka Cular and Louis E. Pappas advance six claims arising from their employment with Metropolitan Life Insurance Company and from the defendants' overseas insurance sales practices.[1] They also advance a claim for fraudulent inducement to enter into a life insurance contract. Defendants, relying on arbitration clauses in agreements executed by both plaintiffs, move to compel Cular and Pappas to submit their claims to arbitration and to stay all proceedings before this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4.

Plaintiffs oppose the motion. They challenge the validity of the arbitration agreements; they argue that the agreements do not apply to them as "mere salespeople;" and they contend that the claims in the amended complaint are outside the scope of the arbitration agreement. Plaintiffs also ask this

Court, pursuant to Fed.R.Civ.P. 42(a), to consolidate this action with *Dornberger v. Metropolitan Life Ins. Co.*, 95 Civ. 10374(LBS), a related class action suit brought by life insurance policyholders.

For the reasons set forth below, defendants' motion to compel arbitration is granted as to counts one through six of the amended complaint. Plaintiffs' motion to consolidate is granted only with respect to count seven (fraudulent inducement to enter into a life insurance contract).

## I. BACKGROUND

### A. Factual background.

This action arises out of the same conduct at issue in *Dornberger v. Metropolitan Life Ins. Co. et al.*, No. 95 Civ. 10374(LBS), a class action brought by individuals living in Europe who purchased the defendants' life insurance policies. Familiarity with the opinion in that case, issued today, and the facts therein, is assumed. *See Dornberger v. Metropolitan Life Ins. Co. et al.*, 961 F.Supp. 506 (S.D.N.Y.1997).

Both cases involve claims that MetLife illegally sold insurance policies to clients living in Europe.[2] According to the plaintiffs in both actions, the defendants offered these policies for sale even though they were aware that their sale violated European and New York state laws governing the sale of insurance in European countries.

---

1. Defendants in this action are Metropolitan Life Insurance Company ("MetLife"), several of its affiliates and subsidiaries (MetLife Securities, Inc., Metropolitan Insurance and Annuity Company, and Metropolitan Tower Life Insurance Company), and the following individual defendants: Harry Kamen, Ted Athanassiades, Roy C. Albertalli, Phillip Briggs, Larry Brewster, Anthony Cannatella, John J. Creedon, Robert J. Crimmins, Harold Leff, James Madera, Jeffrey G. Slane, George P. Slane, John D. McMahon, Stuart G. Nagler, Robert G. Schwartz, John H. Tweedie, Vito Vitone, Edward Walsh, Curtis H. Barnette, Joan Ganz Cooney, A. Luis Ferre, James R. Houghton, Helene L. Kaplan, George M. Keller, Richard J. Mahoney, Allen E. Murray, John J. Phelan, Jr., John B.M. Place, Hugh B. Price, William S. Sneath, and John R. Stafford. These individuals were employees or directors of MetLife during the times at issue in this case.

Jerry L. Beickel, a plaintiff in the amended complaint, dismissed his claims with prejudice on December 19, 1996. Claims against defendant Richard N. Maurer were dismissed with prejudice on December 6, 1996; those against State Street Research & Management Co. and State Street Research Investment Services, Inc. were dismissed on March 4, 1997; and those against Mfawak S. Peress are dismissed today, by separate endorsement.

Unless otherwise indicated, "MetLife" will be used to denote the parent and its affiliates and subsidiaries and "defendants" will be used to refer to the corporate and individual defendants collectively.

2. The facts herein are drawn from the amended complaint in this action ("Compl.") unless otherwise indicated.

The putative plaintiff class (as yet uncertified) in the *Dornberger* action alleges a violation of the civil component of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Specifically it alleges that its members, as policy holders, were defrauded as a result of this conspiracy. The *Dornberger* plaintiffs also allege common law tort and contract claims, and violation of the New York State Insurance Law. Class Action Compl. ¶ 3.[3]

Cular and Pappas allege that they were unwitting participants in, and ultimately victims of, the defendants' illegal insurance scheme. Cular sold "life insurance, mutual funds and other financial products" in Switzerland between 1991 and 1994. Compl. ¶¶ 4, 61, 114. Pappas sold "life insurance and other financial products" in Greece from 1977 until 1995 and, from 1990 until 1995, to American military personnel stationed in Germany. *Id.* ¶¶ 5, 59–60, 120–23. They both allege that they were induced to take these jobs based on representations by the defendants that MetLife's overseas insurance sales practices were legal. More specifically, Cular and Pappas allege that the defendants promised them lifetime employment in Europe and lucrative opportunities during the course of that employment, and that they relied on these promises to their detriment. The plaintiffs now argue that the policies were illegal, and that some or all of the defendants knew this from the inception of MetLife's overseas operations.

In 1994, Cular was informed, first by a client and then by Swiss authorities, that the insurance and mutual fund sales were illegal. She in turn notified defendant Ted Athanassiades, President of MetLife. Cular alleges that her superiors responded to her revelation in a retaliatory fashion, despite their explicit assurances that employees would not be punished for revealing illegal insurance practices. The overseas operations (except for those on American military bases) were suspended and Cular and several other European sales representatives were told that they could either accept transfers to the United States or their employment with MetLife would be terminated. Cular made repeated inquiries concerning the terms of her transfer. These inquiries, she claims, were never answered. Instead, the defendants terminated her employment.

In 1995, Pappas was informed by German authorities that the sale of insurance in Germany by MetLife violated German law. He informed the defendants. They subsequently asked him to stop servicing his existing clients in Greece, as insurance sales to those clients were also illegal.

Plaintiffs seek relief for (1) civil RICO violations; (2) breach of contract; (3) fraudulent inducement of contract; (4) fraud; (5) *prima facie* tort; (6) intentional infliction of emotional distress; and (7) fraudulent inducement to enter into a life insurance contract.

The plaintiffs seek damages for their expenses in relocating to Europe, in setting up sales operations in their respective territories, and in lost commissions, salary and benefits—both retrospective and prospective. They also seek damages for the harm their careers have suffered as a result of their entanglement in MetLife's illegal insurance practices. They claim this entanglement severely limits their ability to work as insurance salespeople and, in the case of Cular, damages her future as a securities broker.

**B. The arbitration agreements.**

As one of the conditions of their employment, Cular and Pappas were each required to complete a Uniform Application for Securities Industry Registration or Transfer (a "Form U–4"). The Form U–4, promulgated by the Securities Exchange Commission, must be completed by anyone seeking to be registered as a securities dealer. Insurance companies may require salespeople to execute these agreements if there is a possibility that they might also be involved in the sale of securities. Pappas never took the NASD exam and never engaged in securities transactions. Cular concedes that she did sell mutual funds on behalf of the defendants. *Id.* ¶¶ 4, 83, 86–87, 97.

Above the signature of the applicant on page 4 of the Form U–4, and below the

---

3. The complaint in *Dornberger v. Metropolitan*    *Life Ins. Co. et al.,* 95 Civ. 10374(LBS).

admonition "THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY," appears this arbitration clause:

> 5. I agree to arbitrate any dispute, claim[,] or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in item 10 as may be amended from time to time.

Decl. of Derek Rotolo, Exh. D.

Both Cular and Pappas signed page 4 of their respective Forms U–4. Both indicated in item 10 an intent to register with the NASD (the National Association of Securities Dealers). The arbitration clause of their Forms U–4 is thus subject to the NASD Manual—Code of Arbitration Procedures (the "Manual"). The Manual defines the following disputes as "Matters Eligible for Arbitration":

> ¶ 3701. Sec. 1. This Code of Arbitration Procedure is prescribed and adopted pursuant to ... the By-Laws of the [NASD] for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the [NASD], or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company:
>
> > (1) between or among members;
> >
> > (2) between or among members and associated persons;
> >
> > (3) between or among members or associated persons and public customers, or others....

The Manual then defines a category of disputes for which submission to arbitration is required:

> ¶ 3708. Sec. 8.(a) Any dispute, claim, or controversy eligible for submission under [Sec. 1] of this Code between or among members and/or associated persons, and/or certain others ... arising out of the employment or termination of employment of such associated person(s) with such mem-

ber, shall be arbitrated under this Code, at the instance of:

> \* \* \* \* \* \*
>
> (2) a member against a person associated with a member or a person associated with a member against a member....

On the strength of the Forms U–4, the MetLife Defendants now ask this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, to compel the plaintiffs to arbitrate their claims and stay these proceedings pending the outcome of that arbitration.

## II.  DISCUSSION

█ The Federal Arbitration Act makes "'arbitration agreements as enforceable as other contracts, but not more so.'" *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 831 (2d Cir.1988) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270 (1967)). In deciding a motion to compel arbitration under the Act, a court must answer two questions: First, did the parties enter into an agreement to arbitrate? Second, and only if the answer to the first question is yes, does the dispute before the court fall within the scope of that agreement? *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–34, 111 S.Ct. 1647, 1651–56, 114 L.Ed.2d 26 (1991); *Spear, Leeds & Kellogg v. Central Life Assurance Co.*, 85 F.3d 21, 25 (2d Cir. 1996).

Plaintiffs raise several objections to defendants' motion to compel arbitration. They challenge the enforceability of the Forms U–4; they contend that the arbitration provisions do not apply to them; and they argue that their claims fall outside the scope of the Form U–4's arbitration clause. These are discussed in turn.

### A.  The Forms U–4 are valid agreements.

The plaintiffs first contend that they did not agree to arbitrate employment disputes they might have with MetLife and, if they did, that defendants should be barred from enforcing those agreements. Their specific challenges to the enforceability of the Forms U–4 are: (1) that the agreements were fraudulently induced and (2) that because the

Defendants failed to provide the plaintiff with copies of the NASD Manual, including a description of the scope of the arbitration provision, they are precluded from compelling arbitration. Neither of these claims has merit.

### 1.

"If the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). As this court has explained, if the "arbitration clause was induced by fraud, there can be no arbitration; and if the party charging this fraud shows there is substance to his charge, *there must be a Judicial trial of that question* before a stay can issue."

*Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 457 (2d Cir.1995) (internal cites omitted, emphasis in original) However, "any claim of fraudulent inducement of the agreement containing the [arbitration] clause would be a matter for the arbitrator." *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir.1987); *see also Prima Paint*, 388 U.S. at 404, 87 S.Ct. at 1806.[4]

■ Pappas does not allege that he was fraudulently induced to agree to the arbitration clause of his Form U–4. Rather, he alleges that he "was told that [the Form U–4] was only an application to take a licensing exam." Pappas Decl. ¶ 3. He insists that he was unaware that by signing the Form U–4 he was agreeing to arbitration. *Id.* To the extent that Pappas is asserting a claim of fraudulent inducement, he attacks the Form U–4 as a whole, and thus raises an issue for the arbitrator, not this Court. *See Manning*, 833 F.2d at 1103.

■ Cular alleges she was fraudulently induced to enter into the arbitration agreement. Her allegations must be resolved by this Court, prior to compelling arbitration, as they raise the question of whether she did in fact agree to arbitration. *See Doctor's Assocs*, 66 F.3d at 457.

■ In resolving whether a party was fraudulently induced to enter into an arbitration agreement, a court should apply state contract law principles. *See First Options*, 514 U.S. at 943–44, 115 S.Ct. at 1924.

■ Under New York state law, a party must prove misrepresentation and reliance on the misrepresented fact to establish that a contract was fraudulently induced. *See Tribune Printing Co., Inc. v. 263 Ninth Ave. Realty, Inc.*, 57 N.Y.2d 1038, 1041, 457 N.Y.S.2d 785, 444 N.E.2d 35 (1982); *Sabo v. Delman*, 3 N.Y.2d 155, 159, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957); *Adams v. Gillig*, 199 N.Y. 314, 317, 92 N.E. 670 (1910); *see also Burstyn v. Horl*, No. 84 Civ. 3064(RLC), 1985 WL 260, at *1 (Feb. 8, 1985) ("Essentially, a party claiming fraudulent inducement asserts that he would not have entered into the contract on the stated terms but for

---

4. Following the Supreme Court's recent decision in *First Options of Chicago v. Kaplan*, 514 U.S. 938, 943–44, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995), there have been several decisions in this district questioning the continuing vitality of the *Prima Paint* distinction between attacks on the arbitration agreement itself and attacks on the contract as a whole (the so-called "*Prima Paint* dichotomy"). *See, e.g., Berger v. Cantor Fitzgerald Securities*, 942 F.Supp. 963, 965 (S.D.N.Y.1996) (Scheindlin, J.); *Aviall, Inc. v. Ryder System, Inc.*, 913 F.Supp. 826, 831 (S.D.N.Y.1996) (Mukasey, J.); *Maye v. Smith Barney, Inc.*, 897 F.Supp. 100, 106 n. 3 (S.D.N.Y. 1995) (Motley, J.). In *First Options* the Court held that unless the agreement clearly provided otherwise, the question of who decided whether there was an agreement to arbitrate was one for the court, not the arbitrator. 514 U.S. at 943–44, 115 S.Ct. at 1924. This presumption in favor of judicial resolution of the question "who decides whether the arbitrator determines arbitrability?" does not disturb the burden on the Court, having concluded that it must decide arbitrability, to determine whether there was fraud in the inducement of the arbitration clause or of the entire agreement. The Second Circuit has, since *First Options*, applied the *Prima Paint* dichotomy in reversing a district court's referral to arbitration of a claim of fraudulent inducement of an arbitration clause. *See Doctor's Assocs*, 66 F.3d at 457 ("The [plaintiffs] allege that they were fraudulently induced to assent to the arbitration clause—not to the rest of the contract. Accordingly, under *Prima Paint*, the district court had to reach the fraudulent inducement issue before deciding whether to compel arbitration.").

the fraud of the defendant."). While Cular alleges a number of misrepresentations, she does not allege that but for any or all of those misrepresentations, she would not have executed the Form U–4. Nor does she allege that but for the misrepresentations, she would have insisted that the arbitration clause of the Form U–4 be redacted. Her claim of fraudulent inducement is thus inadequate as a matter of law. *See Tribune Printing,* 57 N.Y.2d at 1041, 457 N.Y.S.2d 785, 444 N.E.2d 35.

## 2.

█ Plaintiffs' contention that defendants should be equitably estopped from compelling arbitration is similarly flawed. Taking as true plaintiffs' allegations that the defendants "falsified" the Forms U–4, Pls.' Mem. in Opp'n at 12–13, by indicating that they had informed plaintiffs of the rules governing them under the Forms U–4 and provided them with copies of those rules when in fact they had done neither, plaintiffs have still failed to allege the elements of a defense of equitable estoppel.

> Estoppel requires the presence of three elements: "(1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things; (2) wilfulness or negligence with regard to the acts, conduct or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated."

*United States, for the Use and Benefit of Robert DeFilippis Crane Service, Inc. v. William L. Crow Constr. Co.,* 826 F.Supp. 647, 656 (E.D.N.Y.1993) (citing *United States, for*

the *Use and Benefit of Krupp Steel Products, Inc. v. Aetna Ins. Co.,* 923 F.2d 1521, 1526 (11th Cir.1991)). Plaintiffs have alleged none of these elements.

### B. Plaintiffs are "associated persons."

Plaintiffs next argue that they are not subject to the arbitration rules of the NASD, as they are not "associated persons" as defined in the NASD By–Laws.[5]

█ While plaintiffs may not fall into any of the categories enumerated in the NASD Manual, this Court need not reach that question. Several courts have read the Securities Exchange Act of 1934 (the "34 Act"), 15 U.S.C. § 78c(a)(21) as providing a superseding definition of "person associated with a member" or "associated person of a member," in light of the fact that the NASD derives its authority from the 34 Act. *See, e.g., Edelman v. Marek,* No. 91 Civ. 6889(TPG), 1992 WL 321715, at *6–*7 (S.D.N.Y. Oct.23, 1992); *Chisolm v. Kidder Peabody Asset Mgmt., Inc.,* 810 F.Supp. 479, 480 n. 2 (S.D.N.Y.1992). The 34 Act includes in its definition of "associated persons" employees of a member. 15 U.S.C. § 78c(a)(21) (1981). Cular and Pappas were, at the time of the execution of their Forms U–4, indisputably employees of MetLife, and thus fall within the reach of the arbitration provisions of the NASD Manual.

█ "[A]rbitration must be preferred 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Thomas James Assocs. Inc. v. Jameson,* 102 F.3d 60, 65 (2d Cir.1996).[6]

---

**5.** The NASD Manual—By–Laws provides:
¶ 1101. When used in these By–Laws, and any rules of the [NASD], unless the context otherwise requires, the term

     \*    \*    \*    \*    \*    \*

(q) "person associated with a member" or "associated person of a member" means every sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member, whether or not any such person is registered or exempt from registration with the [NASD] pursuant to these By–Laws.

**6.** The facts in *Jameson* also suggest that Cular and Pappas are "associated persons." *Jameson* involved a terminated employee's attempt to arbitrate the conditions of his termination. His former employer, a NASD member, opposed arbitration and sought an injunction based in part on the argument that the NASD Code in effect at that time did not provide for arbitration of employment disputes. 102 F.3d at 63. The Second Circuit held that "[b]ecause we cannot say 'with positive assurance' that 'others' does not include an employee with an employment-related dispute against a member firm, we hold that it does." *Id.* at 65. ("Others" referred to Sec. 1 of the NASD Manual, which provided, *inter alia,* for the arbitration of disputes "between or among members and public customers, or others.") The

Having established that Cular and Pappas did in fact enter into the arbitration agreements contained in their Forms U–4, see above, the Court must now presume arbitrability in ascertaining whether the instant dispute falls within the scope of those agreements. *See First Options,* 514 U.S. at 943–44, 115 S.Ct. at 1924. The preambulatory language of the definition section of the NASD By–Laws ("unless the context otherwise requires"), read with the explicit reference to employment-related disputes now found in the NASD Code and the 34 Act definition of "associated persons," leaves this Court unable to say "with positive assurance" that Cular and Pappas are not associated persons. Therefore, for these purposes, they are.

### C. The claims are arbitrable.

■■■■ Plaintiffs finally contend that, because their claims at least in part turn on allegations of illegal insurance practices, the insurance business exception to the NASD Code precludes arbitration.[7] This argument, also going to the scope of a valid arbitration agreement, " 'must be addressed with a healthy regard for the federal policy favoring arbitration,' and thus, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " *Armijo v. Prudential Ins. Co. of America,* 72 F.3d 793, 797 (10th Cir.1995) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985)).

Plaintiffs rely solely on a recent decision from the District of New Jersey for the proposition that there is a category of disputes that, although they involve employ-ment-related issues, are nonetheless outside the scope of the NASD Code of Arbitration because they involve a NASD member's "business of insurance." *In re Prudential Ins. Co. of America Sales Practices Litig.,* 924 F.Supp. 627, 640–42 (D.N.J.1996). *In re Prudential* is the first decision to reject arbitration based on the "insurance business" exception. *Compare Armijo,* 72 F.3d at 800; *Salloum v. Metropolitan Life Ins. Co.,* Civ. No. 95–1691(AMW)(JAP), Order Adopting Report & Recommendation (D.N.J. Aug. 2, 1995). In so doing, Judge Wolin raised for the first time the question whether there are any circumstances in which a district court can deny a motion to compel arbitration of an employment dispute with a member of the NASD. *Prudential,* 924 F.Supp. at 640. He concluded that there may be situations in which the questions posed by the dispute may be so intertwined with the business of insurance as to overtax the capabilities of an arbitrator trained in securities disputes, *id.* at 640–42, the concern which led the NASD to adopt the insurance business exception.

The motion to compel arbitration before Judge Wolin arose out multi-district litigation involving allegedly illegal insurance sales practices on the part of Prudential Insurance Company. Some of the claims were brought by former sales agents of Prudential, alleging that they were discharged for their refusal to participate in the illegal practices. The balance (and the greater part) of the litigation were class actions brought by current and former policyholders. Prudential sought to compel arbitration of the agents' claims. Judge Wolin denied the motion. He found that the complex insurance law questions

---

Second Circuit noted that the NASD Manual was amended in 1993 "to remove all doubt that employment-related disputes between an associated person (such as Jameson) and a member (such as TJA) are arbitrable." *Id.* at 63 n. 1. Although the *Jameson* court was not confronted with the precise question facing this Court, we note that there is nothing in the *Jameson* opinion to suggest that Jameson was anything more than an employee, and thus presumably in the same category as Cular and Pappas. It strains credulity to view an amendment that explicitly extended coverage of NASD arbitration to employment-related disputes as *limiting* that coverage.

7. Sec. 1 of the NASD Manual, excerpted more fully above, defines as "eligible for arbitration" disputes

arising out of or in connection with the business of any member of the [NASD], or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company:

(1) between or among members;

(2) between or among members and associated persons;

(3) between or among members or associated persons and public customers, or others. . . .

posed by the litigation as a whole were intertwined with the employment-related claims of the sales agents and held that the insurance business exception applied. *Id.* at 641–42.

The amended complaint in this case, by contrast, does not raise complex insurance law questions. Plaintiffs contend that in order to reach their claims against MetLife, an arbitrator will have to negotiate a thicket of European and American insurance regulations. We disagree. While the allegations concerning the illegal insurance practices of the MetLife defendants are sweeping, and their determination must precede the adjudication of the otherwise clearly arbitrable employment-related claims (counts one through six), their resolution is relatively straightforward.[8]

In order to prove the violation of European laws, plaintiffs will have to prove (a) conduct by the MetLife Defendants; (b) regulations in each country in which the conduct took place; and (c) a failure on the part of the MetLife Defendants to comply with those regulations. *See* Compl. ¶¶ 66–77. Taking the exhibits attached to plaintiffs' counsel's declaration filed in opposition to this motion as indicative of the simplicity of that analysis, we conclude that whether or not the policies sold in Europe violated European insurance or other laws is as easily resolved by an arbitrator as by this Court. Each country requires filings and registrations; MetLife either did or did not comply with those requirements. Conover Decl. in Opp'n Exs. A–E.

The plaintiffs also claim that part of defendants' scheme involved plaintiffs in the sale of insurance policies which were said to be secured by the New York state Life Insurance Guaranty Corporation, when in fact they were not. See N.Y. Insurance Law § 7701 *et seq.* (McKinney 1997). Compl. ¶¶ 78–82. Plaintiffs claim they are now exposed, as salespeople, to civil and criminal

penalties in New York. *Id.* ¶ 82. This element of their complaint presents a slightly more complex question, the resolution of which will involve an interpretation of insurance law. However, the question raised is a discrete one. An arbitrator would have to determine whether the plaintiffs sold any insurance policies with an accompanying representation that they were covered by the Guaranty Corporation, when in fact such policies were not covered, as defined by New York law. N.Y. Insurance Law § 7703 (McKinney 1997).

The insurance law inquiry antecedent to the resolution of counts one through six (whether involving European or New York law) is insufficient to trigger the insurance business exception. Because this case is primarily a "garden-variety" employment dispute, the Court cannot say "with positive assurance" that the insurance law components of this case bar arbitration of the underlying employment disputes. *See Jameson,* 102 F.3d at 65. Therefore, we find that counts one through six of the amended complaint lie outside the narrow confines of the insurance business exception and thus, are arbitrable.

■■■ Count seven of the amended complaint, fraudulent inducement to enter into a life insurance contract, does fall within the insurance business exception as it is brought by the plaintiffs in their capacity as insurance policyholders. As such, this count is not arbitrable.

Pursuant to its authority under Fed. R.Civ.P. 42(a), this Court orders the consolidation of count seven of the amended complaint in this case with the *Dornberger* action. The balance of plaintiffs' motion to consolidate is denied.

Having found the claims arbitrable, the Court rejects plaintiffs' contention that the Court should, in the interests of judicial economy and efficiency, deny the motion to

---

8. Count seven of the amended complaint is addressed separately below. Count one of the amended complaint alleges civil violations of RICO, 18 U.S.C. § 1961 *et seq.* In determining the arbitrability of a statutory claim, a court must consider the additional question of whether Congress intended "to preclude a waiver of a judicial forum" for claims under that statute. *Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652. The Supreme Court has concluded that Congress evinced no such intent in passing RICO. *See Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 238–42, 107 S.Ct. 2332, 2343–46, 96 L.Ed.2d 185 (1987).

compel. Such arguments are insufficient to undo the arbitration agreements entered into by the parties.

Plaintiffs' argument that arbitration is inappropriate for those defendants (corporate and individual) not alleged to be parties to the Forms U–4 signed by the plaintiffs is similarly without merit. Each of the defendants is either a member of the NASD, or a person associated with a member, or an "other" person, for purposes of the NASD By-Laws. Each is therefore entitled to compel Cular and Pappas to arbitrate claims against them, based on the Forms U–4 executed by the plaintiffs in their capacity as employees of MetLife. *See* II.B and note 1, above.

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, the proceedings in this action are stayed pending the conclusion of the arbitration.

### III. CONCLUSION

The Court, finding the plaintiffs' arguments to the contrary unavailing, grants defendants' motion to compel arbitration as to counts one through six and stays these proceedings.

Plaintiffs are ordered to submit to arbitration counts one through six of the amended complaint pursuant to the NASD Code of Arbitration. Count seven, the claim for fraudulent inducement to enter into a life insurance contract, is consolidated with *Dornberger v. Metropolitan Life Ins. Co. et al.,* 95 Civ. 10374(LBS), pursuant to Fed. R.Civ.P. 42(a).

All proceedings on the remaining counts 1–6 of the amended complaint are stayed pending the resolution of arbitration proceedings. The matter will be placed on the suspense docket. The parties are to inform the Court in writing of the status of the case every ninety days.

It is SO ORDERED.