**THE PAUL REVERE VARIABLE ANNUITY INSURANCE COMPANY, The Paul Revere Corporation, The Paul Revere Life Insurance Company, The Paul Revere Protective Life Insurance Co., Provident Companies, Inc., and Provident Life and Accident Company, Petitioners,**

v.

**Arthur F. ZANG, Jr. and Harold P. Beck Respondents.**

Nos. CIV. A. 98–40142–NMG,
CIV. A. 98–40147–NMG.

United States District Court,
D. Massachusetts.

Jan. 7, 2000.

Bonnie Pierson–Murphy, Patrick W. Shea, Paul, Hastings, Janofsky & Walker, Stamford, CT, Joseph M. Hamilton, Mirick, O'Connell, DeMaiiie & Lougee, LLP, Worcester, MA, for plaintiffs.

Francis A. Ford, Worcester, MA, Glen DeValerio, Michael G. Lange, Berman, De-

Valerio & Pease, Boston, MA, James R. Hubbard, Duncan J. Farmer, Ricci, Hubbard, Leopold, Frankel & Farmer, West Palm Beach, FL, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The six Petitioners have filed 19 related cases in this Court seeking to compel arbitration of 19 actions brought against them in state court by former employees. The Court disposed of 15 of those cases by an order entered September 13, 1999. Two others were dismissed by an order entered December 29, 1999. Pending before this Court are the petitions to compel the arbitration of the two remaining Respondents, Arthur F. Zang, Jr. and Harold P. Beck, and related motions (Docket No. 1 in both of the above-captioned cases).

## I. *Background*

The Petitioners consist of The Paul Revere Corporation and three of its wholly owned subsidiaries: The Paul Revere Variable Annuity Insurance Company ("Variable"), The Paul Revere Life Insurance Company and The Paul Revere Protective Life Insurance Co., (collectively "Paul Revere"), and Provident Companies, Inc. ("Provident") and its wholly owned subsidiary Provident Life and Accident Company. All six Petitioners were named as co-defendants in 41 separate cases filed by 41 former employees of Paul Revere in the Trial Court of Massachusetts, Superior Court Department for Worcester County, on October 8, 1997 ("the State Cases"). The 41 plaintiffs, each of whom held the title of "General Manager", allege that their employment contracts were unlawfully terminated following a merger of Paul Revere and Provident. Specifically, they claim that the terminations constituted breaches of contract (both express and implied) and violations of several Massachusetts statutes.[1]

---

1. The plaintiffs assert claims against Provident on the theory that Provident is either the

On January 15, 1998, the six defendant companies (Petitioners in the instant cases) filed motions to dismiss in 40 of the 41 State Cases. In 17 of the cases, they joined their motions to dismiss with motions to compel arbitration, arguing that the 17 subject former employees, by virtue of their registrations with the National Association of Securities Dealers ("NASD"), entered into agreements requiring them to arbitrate their disputes. At a later date, the Petitioners sought to compel arbitration in two more cases.

Of the six defendants in the State Cases, Variable is the only one that is a member of NASD and, according to the former employees, is therefore the only entity capable of enforcing those arbitration agreements. After the companies filed their motions to compel arbitration, 15 of the 17 former employees voluntarily dismissed their claims against Variable. The companies contend that those dismissals were deliberate attempts by the former employees to escape their arbitration obligations.

On July 17, 1998, the Petitioners filed 17 cases ("the federal cases") in this Court with respect to the 17 former employees who signed arbitration agreements. Their petitions, which are brought pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3–4, seek orders 1) to compel arbitration and 2) to stay the state court proceedings during the pendency of that particular arbitration.

The 17 former employees named as defendants in the federal cases (the "Former Employees") moved to dismiss the petitions. This Court allowed that motion with respect to 15 of those respondents by an order entered September 13, 1999 because Paul Revere, without Variable, lacked standing to compel arbitration. The motions to dismiss by the other two Former Employees, Zang and Beck, were denied primarily because Variable was still a party defendant in their state court suits. Pending before the Court now are the petitions to compel arbitration specifically

successor employer or the alter ego of Paul

with respect to respondents Zang and Beck.

## II. *Discussion*

The Federal Arbitration Act ("FAA") makes private agreements to submit disputes to arbitration valid, enforceable and irrevocable and requires courts to enforce arbitration agreements in the same way that they enforce contracts. 9 U.S.C. § 1 et seq., *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). If a valid arbitration agreement exists and its scope encompasses the dispute, this Court must compel the parties to submit their dispute to arbitration.

### A. Existence of an Arbitration Agreement

Zang and Beck contend that they never signed an arbitration agreement. With respect to most of the Former Employees, Paul Revere submitted to the Court copies of the Form U–4 Uniform Application for Securities Industry Registration or Transfer signed by the Former Employees, or the equivalent form that existed at the time each employee registered. The U–4 binds the employee to NASD's arbitration rules because it contains an arbitration provision. The other documents provide that the registrant is bound by NASD rules as they exist or from time to time are "adopted, changed or amended." Paul Revere did not attach to the Zang and Beck petitions the actual U–4s showing that Zang and Beck, respectively, signed arbitration agreements. There are two issues related to the existence of arbitration agreements for Zang and Beck:

1. NASD cannot locate some of the U–4 agreements or the equivalent document that Beck signed. Paul Revere has submitted affidavits from the Secretary of NASD stating that the U–4s (or equivalents) are lost, but assuring the Court that any individual registered with NASD must

Revere.

have signed such a form and that NASD cannot find them after "reasonable efforts." NASD supplements its assertions by stating that its records indicate that Beck was registered with NASD and, because every person registered with NASD signs a U–4 (or equivalent) when they register, he must have signed one at the time he registered.

2. There is a question as to whether the agreements that Zang and Beck signed when they registered with NASD included an arbitration clause. Beck registered on November 21, 1968, and filed an amendment to his application on August 6, 1996. According to Beck, the agreement he would have signed in 1968 was a Form A–300, a predecessor of the U–4, that did not contain any arbitration clause. Form A–300 does, however, provide that the person registering with NASD agrees to comply with all NASD regulations as they are "adopted, changed or amended."

Zang registered on February 13, 1974 and signed a Form B–301, another predecessor of the U–4. Form B–301 did not contain an arbitration provision, but it does contain an identical agreement as Form A–300 to abide by adoptions, changes and amendments to NASD regulations.

The Court will address both issues as applied to each respondent.

### 1. Harold Beck

NASD's records indicate that Beck's registration was filed and approved on November 21, 1968. Petition to Compel Arbitration as to Respondent Beck, Exh. 3 (Affidavit and Certification of Business Records). When Beck registered in November 1968, NASD required him to sign a registration application. *Id.* Despite its reasonable efforts, NASD has failed to locate Beck's application. *Id.* Beck also filed an amendment to his registration with NASD on August 6, 1996. *Id.* Although NASD did produce one page of this document, it is unable to locate the complete document. *Id.* Because of the manner in which the Court treats the initial registra-

tion, the later-filed amendment is immaterial.

■ "[T]here is no general rule that proof of a fact will be excluded unless its proponent furnishes the best evidence in his power." *Simas v. First Citizens' Federal Credit Union,* 170 F.3d 37, 51 (1st Cir.1999) (citation omitted). This concept derives from Federal Rules of Evidence 1002 and 1004. Fed.R.Evid. 1002 provides that "to prove the content of a writing ... the original writing ... is required, except as otherwise provided in these rules ..." The mandate of that rule is tempered, however, by Fed.R.Evid. 1004, which provides that the original document need not be produced if it was lost or destroyed, except where the party opposing admission proves the proponent lost or destroyed the original in bad faith. There is no allegation by Beck that Paul Revere or NASD lost or destroyed Beck's application in bad faith. Paul Revere, therefore, does not need to produce the original document to show that an arbitration agreement exists.

■ Paul Revere can prove that Beck signed a registration application, including the Form A–300, without producing the actual form. Although NASD has not located the form which Beck signed, Paul Revere has filed affidavits from NASD that assert that to become registered with that association, one must file an application and that NASD cannot locate Beck's form. Where an actual document is unavailable, secondary evidence of the contents of the document is admissible so long as the original contract was not destroyed or lost in bad faith. *Bituminous Casualty Corp. v. Vacuum Tanks, Inc.,* 975 F.2d 1130, 1132 (5th Cir.1992); Fed.R. Evid. 1004, Advisory Committee Note ("if failure to produce the original is satisfactorily explained, secondary evidence is admissible"). The Court finds that the failure to produce Beck's Form A–300 is satisfactorily explained and, therefore, accepts NASD's affidavits as secondary evidence. The affidavits state that to be registered,

one must sign the relevant forms. One of the forms required when Beck registered was the Form A–300. Accordingly, the Court concludes that Beck signed a Form A–300.

Paul Revere has supplied the Court with a copy of a Form A–300. It is an exhibit to the Petition to Compel Arbitration with respect to William Hudson (Civil Action No. 98–40153). The Form A–300 contains an agreement which binds the signatory to all NASD regulations as they then exist and as they are "adopted, changed or amended."

■ Even though NASD's rules did not provide for arbitration at the time that Beck registered, as described below, NASD did adopt arbitration procedures after he registered. A registered person who agrees to be bound by any amendments to the rules is bound by the rules that exist at the time that his claim arises. *Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656, 659 (5th Cir.1995), *Scher v. Equitable Life Assur. Society*, 866 F.Supp. 776, 778 (S.D.N.Y.1994). Beck agreed to be bound by any NASD rules as they then existed at the time he registered and "as they may from time to time be adopted, changed or amended." He is bound, therefore, to any NASD rules that existed at the time his claim arose.

### 2. Arthur Zang

Paul Revere has produced the form that Zang signed when he registered with NASD. That form, B–301, also contains a provision that the registrant would be bound by all NASD regulations as they exist and are "adopted, changed or amended." Petitioners' Memorandum of Law in Opposition to Respondents' Motion to Dismiss, Exh. 19.

As was the case with Beck, Zang agreed, when he registered, to be bound by NASD's then existing rules and "as they may from time to time be adopted, changed or amended." For the same reasons that Beck was bound by the arbitra-

tion agreement, Zang is also bound to the NASD rules that existed at the time his claim arose.

### B. Scope of the Arbitration Agreement

■ NASD adopted its Code of Arbitration ("the Code") on November 1, 1968. *See Financial House, Inc. v. Otten*, 369 F.Supp. 105, 106–07 (E.D.Mich.1973). In 1975, the SEC began using Form U–4 without arbitration language. *See Association of Inv. Brokers v. S.E.C.*, 676 F.2d 857, 860 (D.C.Cir.1982). In the early to mid 1980s, NASD amended its Form U–4 to include arbitration language. *See Kidd v. Equitable Life Assurance Society of U.S.*, 32 F.3d 516, 517 (11th Cir.1994). On October 1, 1993, NASD amended its rules to include language concerning the arbitration of disputes "arising out of the employment or termination of employment of associated person(s) with any member." *Kidd*, 32 F.3d at 518, citing NASD Manual (CCH) ¶ 3701. Section 8(a) of NASD Manual provides for mandatory arbitration of disputes between members and associated persons arising out of the employment context. NASD Manual (CCH) ¶ 3708. Accordingly, NASD rules provide for mandatory arbitration of any claim that arose after October 1, 1993 involving an employment dispute between an associated person and a member. The claims of both Zang and Beck meet those criteria, to wit:

1. Zang and Beck filed their claims on October 8, 1997 charging Paul Revere with breach of their respective employment agreements and changes in compensation that arose after the merger of Paul Revere and Provident in 1995. Because the claims of both Zang and Beck arose after 1993, when NASD instituted mandatory arbitration of employment disputes, the 1993 rules apply to their disputes.

2. Both claims involve employment disputes because Zang and Beck filed claims for breach of an employment contract.

3. These are disputes between a member and persons associated with a member.

Both Zang and Beck admit that Variable is a member within the meaning of that term contained in NASD rules. NASD By-Laws at § 1101(q) describes a "person associated with a member" and "associated person of a member" as:

Every sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions ...

Because Zang and Beck were General Managers of Paul Revere, they qualify as "persons associated with a member." Based upon the foregoing, the scope of the arbitration clause encompasses the disputes of both Zang and Beck.

Zang and Beck argue that they should not be compelled to arbitrate their employment disputes because they did not sell securities for Variable. Neither Zang nor Beck support this argument with any legal authority. Furthermore, the selling of securities is immaterial to the arbitrability of employment disputes. *Cular v. Metropolitan Life Ins. Co.*, 961 F.Supp. 550, 553–58 (S.D.N.Y.1997)(compelling arbitration even where plaintiff "never engaged in securities transactions"). Whether Zang or Beck ever sold any securities as General Managers does not matter. They agreed to be bound by NASD rules which provide for arbitration of employment disputes between a member and a person associated with a member. Zang and Beck are, therefore, bound to arbitrate their claims based upon employment disputes.

## C. Notice

The registration forms that both Zang and Beck signed provided that they

accept[ed] and agree[d] to abide by, comply with and adhere to all of the provisions, conditions and covenants of [NASD's] Certificate of Incorporation, the By-Laws, the Rules of Fair Practice and the Code of Procedure for Handling Trade Practice Complaints of the Association, and regulations of the Association as they are or may from time to

time be adopted, changed or amended ...

As stated above, the form Beck is deemed to have signed (Form A–300) is an exhibit in another former employee's case and the form Zang signed, B–301, is Exhibit 19 to Petitioner's Memorandum of Law in Opposition to Respondent's Motion to Dismiss (Docket No. 5). By agreeing to accept and abide by NASD rules, both as they existed and as they have been from time to time amended, Zang and Beck agreed to comply with the rule that now requires them to arbitrate their claims.

■ Zang and Beck both contend that Paul Revere was required to notify them of any changes to the rules that would affect them. The language of the registration forms does not indicate, however, that NASD or any member, such as Paul Revere, was required to notify registrants of any amendments to NASD rules. The form simply states that the registrant agrees to be bound by the rules as they may be amended. Any assertion that Paul Revere had to notify its employees of any changes to NASD rules is inaccurate.

In support of their contention, both Zang and Beck cite *Rosenberg v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir.1999), in which the First Circuit required notification of mandatory arbitration clauses in employment discrimination suits. Paul Revere's countervailing argument that *Rosenberg* is inapposite is persuasive because the First Circuit expressly limited its holding to the employment discrimination context. *See* 170 F.3d at 17 ("nothing in this opinion concerns the enforceability of provisions of the U–4 Form or the NYSE Rules not related to the arbitration of employment discrimination disputes").

Neither Zang nor Beck assert any statutory discrimination claims in their state court actions which would invoke the reasoning of *Rosenberg*. The cited language is only one of three instances in which the First Circuit limits the applicability of

*Rosenberg* to the employment discrimination arena. This Court declines to expand that holding to the wider general employment dispute context, especially where the First Circuit has gone to great lengths to limit its application.

Our conclusion is bolstered by the fact that Merrill Lynch, the defendant in *Rosenberg,* had agreed expressly to familiarize its employees with the NYSE's rules, regulations and bylaws. *Id.* at 20. The First Circuit reasoned that it was inappropriate under the Civil Rights Act of 1991 (the statute giving rise to Rosenberg's claim), to compel arbitration of statutory discrimination claims based on the rules of the NYSE where the employer had breached that agreement. Here, Paul Revere never undertook any obligation to familiarize its employees with NASD rules. Any reasoning employed by the First Circuit that would require a member to notify its employees of rule changes is inapplicable absent an agreement to do so. As Paul Revere had no obligation to inform its employees of NASD rule changes, its failure to notify Zang and Beck of the invocation of mandatory arbitration cannot be held against it. Paul Revere did not, therefore, need to notify Zang and Beck of any change in NASD rules, nor specifically the adoption of the rule requiring arbitration of employment disputes.

■ Zang and Beck next cite NASD Rule 3010, which was adopted on April 13, 1989. Rule 3010(a) requires members to

> establish and maintain a system to supervise the activities of each registered representative and associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with the Rules of [NASD].

The supervisory system that Rule 3010 requires must be codified in "written supervisory procedures" as described in NASD Rule 3010(b).

NASD Rule 3010(b)(4) requires members to amend their supervisory procedures to reflect pertinent changes to securities laws, regulations and NASD rules. The rule further requires members to communicate any amendments of their own procedures to their employees. Zang and Beck argue that those rules required Paul Revere to notify them of any change in NASD rules, including the invocation of mandatory arbitration of employment disputes.

By examining the notice to members explaining new Rule 3010, it is clear that it was designed to require members to supervise their employees in order to achieve greater compliance with the securities laws. *See* NASD Notice to Members 88–11 (February 8, 1988). The adoption of mandatory arbitration for employment disputes does not, however, fit within the category of securities laws changes that NASD sought to have members convey to their employees. Paul Revere was not, therefore, required to amend its written supervisory procedures to reflect NASD amendments regarding arbitration, nor, in turn, to notify Zang and Beck of the adoption of mandatory arbitration of employment disputes.

**D. Insurance Business Exception**

■ Zang and Beck also contend that their claims against Paul Revere fall outside the scope of the arbitration provisions because of the insurance business exception contained in Section One of the Code. That section exempts from the universe of potentially arbitrable claims those "disputes involving the insurance business of any member which is also an insurance company." NASD Code § 1.

The fact that Variable is an insurance company does not, however, mean that any dispute with an employee automatically involves its "insurance business." To the contrary, courts have almost universally held that being employed by an insurance company is not enough to trigger the exception and instead examine the degree to which the pending claim is entangled with the company's insurance business.

*Armijo v. Prudential Ins. Co. of America,* 72 F.3d 793, 800 (10th Cir.1995) (claims of employment discrimination brought against insurance company did not involve insurance business of the defendant); *Cular v. Metropolitan Life Ins. Co.,* 961 F.Supp. 550, 558 (S.D.N.Y.1997) (breach of contract claim was a "garden variety" employment dispute not covered by the insurance business exception); *Vitone v. Metropolitan Life Ins. Co.,* 943 F.Supp. 192, 198 (D.R.I.1996) (inquiring whether a "comprehensive evaluation" of the defendant's insurance business would be required to resolve the plaintiff's claims); *Wojcik v. Aetna Life Ins. and Annuity Co.,* 901 F.Supp. 1282, 1291 (N.D.Ill.1995) ("exception may not be triggered simply because the dispute involves an insurance company"); *Young v. Prudential Ins. Co. of America,* 297 N.J.Super. 605, 688 A.2d 1069, 1081 (1997) (looking to whether insurance practices are "at the heart of the case").

The subject dispute concerns the obligations of Paul Revere to its employees under the General Manager Agreements. Although the dispute may tangentially implicate general insurance business concepts, that fact does not transform what is essentially an employment dispute into one that falls within the insurance business exception. With respect to the case cited by the Former Employees, *Hagan v. Minnesota Mutual Life Ins. Co.,* 721 So.2d 167 (Ala.1998), this Court simply disagrees with its holding that an employment dispute with an insurance company necessarily involves the insurance business of that company. That case is contrary to the extensive authority reaching the opposite conclusion and this Court declines to adopt its reasoning.

For the foregoing reasons, both Zang and Beck will be required to arbitrate their disputes.

**E. The State Court Action**

Paul Revere has also requested a stay of the parallel State Cases. To compel arbitration in the face of a state court action in which the same claims are being litigated invokes the Federal Anti-Injunction Act, 28 U.S.C. § 2283. That Act permits federal courts to enjoin state court proceedings in three limited circumstances, "as expressly authorized by act of Congress, where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 22 U.S.C. § 2283. Those circumstances are narrowly construed. *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 287, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970).

This Court finds that it is premature to address the issue of a stay and will, therefore, deny that aspect of the petition without prejudice. The Petitioners may renew their request for a stay if and when it appears that the proceedings within the state court will conflict with the ruling of this Court.

**ORDER**

For the foregoing reasons, it is hereby ordered that:

1) The Petitioners' request to compel arbitration of the claims of Arthur F. Zang, Jr. (Civil Action No. 98–40142) and Harold P. Beck (Civil Action No. 98–40147) (Docket No. 1 in both cases) is ALLOWED. The parties are directed to submit their dispute to arbitration by the National Association of Securities Dealers.

2) The Petitioners' request for a stay of the State Cases (filed in Civil Action No. 98–40142 and in Civil Action No. 98–40147)(Docket No. 1 in both cases) is DENIED, WITHOUT PREJUDICE.

So ordered.