ALMON, Justice.
Norman F. Hagan III, the plaintiff in an action pending in the Jefferson Circuit Court, petitions for a writ of mandamus directing the circuit court to set aside its order granting the defendants’ motions to compel arbitration of Hagan’s claims. The arbitration agreement on which the defendants rely appears in Hagan’s application for registration as a securities industry agent or representative for MIMLIC Sales Corporation, which is not a defendant to this action. Hagan’s complaint alleges libel, fraudulent inducement, fraudulent concealment, and breach of contract. The questions raised by this petition are whether the dispute is within the scope of the arbitration agreement and whether the defendants have standing to seek specific performance of the arbitration agreement.
On November 26, 1990, Hagan entered into an agent’s contract with The Minnesota Mutual Life Insurance Company (“Minnesota Mutual”). He was hired by Rick A. Size-more, the principal owner of Paragon Financial Services, Inc. Sizemore is listed as “general agent” on Hagan’s contract with *169 Minnesota Mutual. Hagan was hired to sell life and health insurance. In his complaint, he alleges that Minnesota Mutual, Sizemore, and Paragon fraudulently induced him to leave his successful business to become a full-time agent with Minnesota Mutual; that they libeled him in a letter sent to his clients; and that Minnesota Mutual breached its contract with him by failing to compensate him for his existing business when it terminated his employment on December 10, 1994. His agent’s contract with Minnesota Mutual does not contain an arbitration clause, and there is no indication before us that either Sizemore or Paragon is a party to any contract with Hagan.
On August 27, 1992, Hagan submitted a Form U-4, a “Uniform Application For Securities Industry Registration Or Transfer.” In that application, Hagan applied for registration with the National Association of Securities Dealers (“NASD”) under two categories, “agent” and “investment company and variable contracts products representative.” The “Firm Name” stated on the application is “MIMLIC Sales Corporation.” MIMLIC is a wholly owned subsidiary of Minnesota Mutual. MIMLIC is a member of the NASD; Minnesota Mutual is not. The application includes the following arbitration clause:
“I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations listed in Item 10 as may be amended from time to time [in Hagan’s application, the only organization selected from Item 10 was the NASD ] and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.”
(Emphasis added.)
Pursuant to Art. VII, § 1(a)(3) of its bylaws, the NASD adopted a Code of Arbitration Procedure. That Code includes § 10101, “Matters Eligible for Submission,” which provides for the arbitration
“of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company:
“(a) between or among members;
“(b) between or among members and associated persons; [and]
“(c) between or among members or associated persons and public customers, or others....”
(Emphasis added.) A “person associated with a member” or an “associated person of a member” is defined as
“every sole proprietor, partner, officer, director, or branch manager of any member [of the NASD], or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member, whether or not any such person is registered or exempt from registration with the [NASD] pursuant to these ByLaws.”
NASD Bylaws, Art. I, ¶ q. Under this definition, only a natural person is an “associated person of a member.” Because Minnesota Mutual is not a natural person, it is not an “associated person of a member.”
Sizemore is also registered with the NASD as an agent or representative of MIMLIC. Sizemore, Paragon, and Minnesota Mutual argue that Hagan’s complaint against them comes within the terms of § 10101 because, they say, the dispute is one between or among members and associated persons. Minnesota Mutual argues that, as parent of MIMLIC, it is entitled to invoke the arbitration clause; essentially, it is arguing that it steps into the shoes of MIMLIC as a member of the NASD. However, if Minnesota Mutual steps into the shoes of MIMLIC as a member, then the dispute is one “involving the insurance business of any member which is also an insurance company” and therefore is expressly excepted from the operation of § 10101.
*170 Minnesota Mutual hired Hagan as an insurance agent. He applied for registration as a securities agent to sell certain products offered by MIMLIC. Hagan’s “Agent Sales Agreement” with MIMLIC provides, in part:
“THIS AGREEMENT, Made this 11th day of February, 1993, by and between MIMLIC Sales Corporation, a Minnesota corporation (the ‘Underwriter,’ ‘we,’ ‘us,’ ‘our’), ... and Norman F. Hagan III (the ‘Agent,’ ‘you,’ ‘your’).
“WHEREAS, the Underwriter has entered into a Distribution Agreement relating to Variable Adjustable Life insurance policies (the ‘policies’) participating in the Minnesota Mutual Variable Life Account (the ‘Variable Life Account’), a registered separate account of The Minnesota Mutual Life Insurance Company (‘Minnesota’), under which the Underwriter was engaged and agreed to act as principal underwriter in the sale and distribution of the policies to the public; and
“WHEREAS, the Underwriter has entered into a Distribution Agreement relating to Variable Annuity Contracts (‘contracts’) participating in Minnesota Mutual Variable Fund D and Minnesota Mutual Variable Annuity Account, each a registered separate account of The Minnesota Mutual Life Insurance Company (the ‘Separate Accounts’), under which the Underwriter was engaged and agreed to act as principal underwriter in the sale and distribution of the contracts to the public.
“WHEREAS, the Agent is a registered representative of the Underwriter; and
“WHEREAS, the Underwriter desires that the Agent participate in the sale and distribution of those policies and contracts to the public;
“NOW, THEREFORE, the Underwriter hereby appoints Agent as its registered representative for the solicitation, sale and distribution of the policies and contracts to the public, subject to [specified] terms and conditions.”
(Emphasis added.)[1] Obviously, the “policies” that Hagan agreed to sell for MIMLIC involve the “insurance business” of MIMLIC within the meaning of § 10101. The “contracts” may or may not involve the insurance business of MIMLIC, but, even if they do not, the mere fact that Hagan was authorized to sell some noninsurance products of MIM-LIC does not override the fact that Hagan’s dispute with Minnesota Mutual, Paragon, and Sizemore involves the insurance business of those defendants and, perhaps, MIMLIC.
Hagan insists that he has no dispute with MIMLIC and argues that, therefore, the arbitration clause in the application for registration as a securities agent for MIMLIC cannot be invoked to require arbitration of this dispute. There may be merit in Hagan’s argument, but the defendants counter with the argument that they are entitled, either as the parent corporation of a member, as an “associated person” (Sizemore), or as a corporation (Paragon) owned by an associated person, to invoke the arbitration clause in an employment-related dispute between themselves and Hagan as another “associated person.” It seems an unreasonable stretch of an arbitration clause in an application for registration as a securities agent to apply it to any employment dispute between that applicant and any other entity or person who happens to be “associated” or otherwise connected with a member of a securities association, but we need not decide whether the clause in Form U-4 can generally be stretched that far. In its own terms, it incorporates the rules of the relevant association, and the rules of the NASD expressly except “disputes involving the insurance business of any *171 member which is also an insurance company.”
We conclude that this exception applies because of Minnesota Mutual’s status as an insurance company, regardless of whether MIMLIC, the only NASD member connected with this case, “is also an insurance company.” It would be an unreasonable reading of § 10101 to conclude that the exception does not apply because MIMLIC is not an insurance company, when the only basis for invoking the arbitration clause in Hagan’s U-4 application at all is the argument that Minnesota Mutual is entitled to invoke that clause as the parent of MIMLIC. Either Minnesota Mutual is not a member, and so cannot invoke the arbitration clause, or, if it somehow can be deemed entitled to invoke the rights of a member, it should also be governed by the exception, which would apply to it because it is clearly an insurance company. In other words, we will not limit the exception to “the insurance business of any member” as distinguished from the insurance business of one of the parties to the dispute, especially when no member is even a party to the dispute. Minnesota Mutual argues that it is entitled to invoke the arbitration clause because, it says, “Minnesota Mutual’s business is so closely intertwined with that of MIMLIC, an NASD member, that Minnesota Mutual is entitled to compel arbitration pursuant to § 10101(2), which allows a member to compel arbitration of a dispute with a person ‘associated with a member.’ ” Minnesota Mutual would like to step into the shoes of MIMLIC as a securities association member, but, in attempting to do so, it fails to point out that it is also an insurance company and that the dispute involves its insurance business. Under these facts that Minnesota Mutual fails to point out, the exception of § 10101 should apply.
Even when Minnesota Mutual points out that Sizemore is also an associated person (and therefore, it says, is entitled to invoke the arbitration clause), it says that this is so because he “was an agent of MIMLIC and sold registered insurance products.”
Nothing about Hagan’s dispute with these defendants involves his agreement with MIMLIC to sell securities for MIMLIC; indeed, it seems that the products he sold for MIMLIC were at least arguably both insurance and securities, and so the exception would seem to apply even if his dispute involved MIMLIC’s business as opposed to involving his relations with Minnesota Mutual, Sizemore, and Paragon.
It seems clear that the purpose of the exception is to exclude disputes involving the business of insurance as distinguished from those involving the sale of securities. A plain reading of § 10101 of the Code of Arbitration of the National Association of Securities Dealers is that it is intended to require arbitration of disputes regarding the securities business of its members. It is reasonable to conclude that securities regulations apply only to the securities business, and not to the insurance business. Indeed, the insurance business is commonly exempted from laws that regulate other businesses and industries. See, e.g., the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), which provides in part: “No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.”[2] Similarly, the NASD, in adopting its Code of Arbitration, was careful to except disputes involving the insurance business, which is not within the field of operation of the NASD.
We are aware that some courts have otherwise construed § 10101 or its similarly worded predecessors. However, some of the cases relied on by the defendants have applied a Form U-4 arbitration to a dispute with an insurance company without even mentioning the exception to § 10101. Hermes v. Prudential Ins. & Fin. Services, 109 Ohio App.3d 309, 671 N.E.2d 1384 (1996); *172 Gerga v. The Prudential Ins. Co. of America, d/b/a Prudential Ins. & Fin. Services, No. 96-12932, (Hennepin County, Minn., District Court, Feb. 10, 1997) (copy provided in Minnesota Mutual’s brief, at app. C); Tom v. The Minnesota Mut. Life Ins. Co., No. CC-95-1805 (Hawaii Circuit Ct., 1st Cir., March 19, 1997) (copy provided in Minnesota Mutual’s brief, at app. D).
We find unpersuasive the reasoning of the cases that have discussed the exception to § 10101 and held that it did not apply to the claims at issue. In Armijo v. Prudential Ins. Co. of America, 72 F.3d 793, 795 (10th Cir.1995), the three plaintiffs “primarily sold insurance policies, but also sold mutual funds through Pruco Securities Corporation,” a wholly owned subsidiary of Prudential Insurance Company. The plaintiffs filed claims in a federal court alleging that their employment had been terminated based on their race, sex, or national origin. The Court of Appeals for the Tenth Circuit rejected their argument for application of the exception to the NASD provision that is now § 10101:
“Although Prudential is an insurance company, there is nothing unique about these discrimination claims by Plaintiffs that involve the ‘insurance business’ of Prudential. Plaintiffs are simply alleging that they were wrongfully discriminated against as employees in violation of [federal and state laws]. Illegal employment discrimination, if it exists, involves an employer’s statutory obligations as an employer rather than as an insurer. Admittedly, Prudential’s explanation for its actions against these Plaintiffs is that, in part, they replaced one Prudential policy with another or knowingly sold a policy based on a false application form. However, the dispute as framed by the Plaintiffs is predicated on the civil rights laws, not the insurance laws, and they are predicated on Prudential’s role as an employer rather than as an insurer.
“If Section [10101] of the NASD Code were construed to exclude from arbitration any employment dispute that arises within the context of insurance employment, it would render the arbitration language in these Plaintiffs’ Forms U-4 illusory. Once again, our obligation is to reconcile and to give meaning to all provisions of the parties’ contracts. Our obligation to construe arbitration clauses broadly compels us to construe this exception to the arbitration clause narrowly. Thus, we conclude that the insurance exception to arbitrability does not include an exception for ordinary employment disputes merely because the defendant employer is an insurance company.”
We see nothing in the exception that requires application of insurance laws before the exception is triggered; rather, the exception plainly states that the arbitration clause does not apply to “disputes involving the insurance business of any member which is also an insurance company.” What could be more crucial to the insurance business than the employment of agents to sell insurance? We respectfully disagree with the Tenth Circuit’s conclusion that enforcing § 10101’s exception in its own terms renders Form U-4’s arbitration clause “illusory.” Rather, we read the arbitration clause in Form U-4 as applying to applicants for securities registration so as to provide for arbitration of disputes that are “required to be arbitrated under the rules, constitutions, or by-laws of’ the relevant securities association. The Code of Arbitration of the NASD does not require arbitration of disputes concerning the insurance business of an association member that is an insurer as well as a securities firm. Surely the employment of insurance agents by an insurance company involves the insurance business of the insurance company.
Similar results, for similar reasons, were reached by federal district courts in Battle v. Prudential Ins. Co. of America, 973 F.Supp. 861, 868-69 (D.Minn.1997) (“To trigger the insurance exception, the plaintiff must allege unlawful insurance practices, and not wrongful conduct directed at the plaintiff,” citing Pitter v. Prudential Life Ins. Co. of America, 906 F.Supp. 130 (E.D.N.Y.1995)); Cular v. Metropolitan Life Ins. Co., 961 F.Supp. 550, 558 (S.D.N.Y.1997) (complaint not within the exception because it “does not raise complex insurance law questions”); Prudential Ins. Co. of America v. Shammas, 865 F.Supp. 429, 432 (W.D.Mich.1993) (“The allegations in *173 the complaint all concern alleged conduct toward Mr. Shammas by other employees and other people. The conduct complained of had nothing specifically to do with the insurance aspect of Prudential’s business.”); and Foley v. Presbyterian Ministers’ Fund, (No. 90-1053, E.D.Pa., March 19, 1992) (dispute “arises out of the Fund’s personnel practices, not its ‘insurance business’ ”).
We respectfully disagree with the conclusions reached by those courts. It seems that those courts are grafting onto § 10101’s exception a requirement that, in addition to “involving the insurance business of a member that is also an insurance company,” the claims at issue must involve only questions of insurance law, or even “complex” questions of insurance law. In our view, the exception, in its plain terms, simply excepts disputes involving the insurance business of insurance companies from the arbitration clause that applies to the securities business of securities companies. The dispute before us involves the insurance business of Minnesota Mutual, an insurance company, and the actions of its general agent, Sizemore, through his company, Paragon, in the furtherance of that insurance business.
If a provision in a contract is plain on its face, there is no room for construction. “If the meaning of the contract can be discerned through a plain reading, the court will not twist the language in order to create ambiguities.” Shadrick v. Johnston, 581 So.2d 805, 810 (Ala.1991). The rule, applied by the federal courts, that ambiguities in arbitration clauses will be construed in favor of arbitration,[3] arises only if there is an *174 ambiguity. To the extent that § 10101 applies to this dispute at all (as explained above, Minnesota Mutual can invoke the arbitration clause in Form U-4 only if it can step into the shoes of MIMLIC, its subsidiary, as a member of the NASD), its exception applies so that this dispute is not “required to be arbitrated under the rules” of the NASD, and the arbitration clause in Form U-4 does not apply to this dispute.
An arbitration agreement applies only to disputes to which the parties have agreed for it to apply. “[AJrbitration is simply a matter of contract between the parties; it is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration.” First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985, 993 (1995). “[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.” Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444, 454 (1985). “[Wjhether the arbitration provision inures to the benefit of appellants and may be construed, in the light of the circumstances surrounding the litigants’ agreement, to cover the dispute that has arisen between them” is “a straightforward issue of contract interpretation.” Perry v. Thomas, 482 U.S. 483, 492, 107 S.Ct. 2520, 2527, 96 L.Ed.2d 426, 437 (1987). The arbitration agreement in the Form U-4 that Hagan signed for the sake of selling securities on behalf of MIMLIC does not apply to Hagan’s dispute with Minnesota Mutual, Sizemore, and Paragon over the insurance business of Minnesota Mutual. The parties did not agree to arbitrate disputes such as this one; the circuit court is directed to set aside its order granting the defendants’ motion to compel arbitration.
WRIT GRANTED.
SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C. J., concurs in the result.
MADDOX, J., dissents.

. There is another "Agent Sales Agreement” between MIMLIC and Hagan in the materials before us. It is in a different form and refers to appointing Hagan as MIMLIC's representative "for the purpose of engaging in the securities business on behalf of MIMLIC." However, the text of that agreement refers to the sale of "Variable life insurance policies or variable annuity contracts issued by Minnesota Mutual." Thus, it appears that at least some of the "securities” are also "insurance.” Moreover, this copy of the agreement is dated January 12, 1993, and may have been superseded by the February 11, 1993, agreement quoted in the text. In any event, the fact that Hagan may also have been entitled to sell some form of "securities” that were not within the "insurance business" of MIMLIC does not undermine this Court's conclusion that the disputes set forth in Hagan's complaint involve the insurance business of the defendants within the meaning of § 10101.

. No argument is made here that § 8-1-41(3), Ala.Code 1975, is a law of this state regulating the business of insurance within the meaning of the McCarran-Ferguson Act so that the McCarran-Ferguson Act prevents the Federal Arbitration Act, 9 U.S.C. § 1 et seq., from invalidating or superseding § 8-1-41(3) in the context of insurance. Therefore, we do not address that question.

. We note the concurring opinion of Senior District Judge Jenkins, in Armijo v. Prudential, 72 F.3d at 800-02, including the following:
"The ‘presumption of arbitrability’ the court applies elevates arbitration agreements to a preferred position over other contracts.
[[Image here]]
"It seems to me that the rule that doubts about the scope of arbitrable issues should be resolved in favor of arbitration, like other rules of construction, should be applied only as a last resort, after the court or trier of fact has considered extrinsic evidence of the parties' intent and found it inconclusive.... Under the majority’s reasoning, which, I believe, is consistent with controlling Supreme Court precedent, as long as a colorable argument can be made that a contract requires arbitration, the court is required to bypass the usual methods of contract interpretation and compel arbitration regardless of the parties' actual intent.
[[Image here]]
"Nevertheless, I am troubled by the direction the case law under the Arbitration Act has taken. What I believe was originally intended only to put arbitration agreements on the same footing as other contracts is now seen as a strong federal policy favoring arbitration agreements.
[[Image here]]
"I am particularly troubled in cases such as this involving arbitration of employment disputes. The Arbitration Act expressly says it does not apply 'to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.' 9 U.S.C. § 1. Presumably, insurance agents who are also qualified to sell securities are ‘workers engaged in foreign or interstate commerce.' In making an exception for employment contracts, Congress recognized that arbitration provisions in such contracts are not really bargained for at all. Ordinarily, if a person wants a job, he must agree to the employer's terms, however onerous they may be. See Gilmer [v. Interstate/Johnson Lane Corp., 500 U.S. 20, at 39, 111 S.Ct. 1647, at 1659, 114 L.Ed.2d 26, at 461[45-46] (1991)] (Stevens, J. dissenting) (quoting Hearing on S. 4213 & S. 4214 before a Subcommittee of the Senate Committee on the Judiciary, 67th Cong., 4th Sess., 9 (1923)). The plaintiffs in these cases, however, have not argued that the exception for employment contracts contained in section 1 of the Arbitration Act applies to them, presumably because the Supreme Court’s decision in Gilmer appears to have foreclosed that argument. See 500 U.S. at 25 n. 2, 111 S.Ct. at 1651 n. 2 [, 114 L.Ed.2d at 36 n. 2] (section l's exclusionary clause does not apply to arbitration clauses contained in securities registration applications which, are contracts between the applicant and a securities exchange, not between an employee and his employer). I do not believe that an employer, such as Prudential, should be able to escape the strictures of the Arbitration Act indirectly, by requiring its employees to enter into contracts with third parties (such as securities exchanges) to arbitrate disputes with their employer, when it could not demand such a concession from the employee directly, in the contract of employment.
“Nevertheless, I believe that the case law under the Arbitration Act is now so firmly established that a return to Congress's original intent will require congressional action."
72 F. 3d at 802. Like Judge Jenkins, we question the apparent interpretation by some federal courts that the FAA requires arbitration clauses to be given a preferred status over other contractual provisions, over ordinary principles of con *174 tract interpretation, and over other principles of law. The FAA itself provides that arbitration clauses in interstate commerce contracts “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2. Certainly, the FAA and arbitration clauses cannot be given precedence over constitutional provisions, such as the Seventh and Fourteenth Amendments to the Constitution of the United States. Unless some compelling principle of federalism under the Supremacy Clause of the United States Constitution requires otherwise, we think that the provisions of the Alabama Constitution, such as §§ 10, 11, and 13, and our laws, such as § 8-1-41(3), Ala.Code 1975, should be given a field of operation even as to a contract that in some extended sense involves interstate commerce.