Michael D. **BANK**, Thomas M. Dusel and Robert J.M. O'Hare, Jr., in their capacity as trustees of 400 Wyman Street Trust, Plaintiffs, Appellees,

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION,** Defendant, Appellant.

No. 96–1355.

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1996.

Decided Nov. 5, 1996.

J. Charles Mokriski with whom Kenneth E. Werner and Jonathan I. Handler, Boston, MA, were on brief, for defendant, appellant.

Saul A. Schapiro with whom David W. Rosenberg, Boston, MA, was on brief, for plaintiffs, appellees.

Before SELYA, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

The parties in this case—International Business Machines Corp. (IBM) and the 400 Wyman Street Trust (the Trust)[1]—comprise a partnership created for the purpose of developing and operating an office building in Waltham, Massachusetts. The Trust secured an opportunity for the Partnership to reduce its debt by purchasing its own mortgage at a substantial discount. IBM opposed the deal. The issue before us is whether IBM's veto is absolute, or whether the dispute must be arbitrated; under the Partnership Agreement, the answer turns on whether the proposal involves an acquisition of "an interest in real property" or a "refinancing." The district court deemed it a refinancing, and granted the Trust's motion to compel arbitration. *See Bank v. International Business Machines Corp.*, 915 F.Supp. 491, 498 (D.Mass.1996). The issue is close, but we conclude that the refinancing provision is inapplicable because the proposal that has been presented so far lacks refinancing content. Consequently, we reverse.

## I. *Factual Background*

IBM and the Trust entered into the Partnership in October 1986. The Partnership Agreement specifies that the Partnership would seek to finance the construction and operation of the office building with a non-recourse loan, and a $75 million loan imposing no liability on either party for repayment of the principal was, in fact, obtained from Citicorp Real Estate, Inc.

The Trust is the managing partner of the Partnership, holding a 51% interest. IBM has a 49% interest. Under the terms of the Agreement, the Trust contributed the undeveloped parcel at 404 Wyman Street, valued at $19.3 million, and IBM made a $1 million capital contribution as well as a long-term lease commitment. IBM also agreed to provide additional capital as needed until its equity reflected its 49% share in the venture, creating an approximately $17.5 million potential obligation for IBM at the outset of the undertaking. None of that capital has been contributed to date.

In 1995, the Trust attempted unsuccessfully to negotiate a restructuring of the loan ("the Note"), whose remaining principal balance was about $72 million. The lenders,[2] however, offered to sell the note in its entirety for about $54 million. IBM contended the price was too high and expressed its unwillingness to make the purchase. Because the offer would expire soon, the Trust caused its corporate affiliate, Wyman Loan Corp. (Wyman Loan), to buy the Note and then proposed that it be resold to the Partnership at its cost. IBM refused to go along with the purchase, prompting the Trust to file a demand for arbitration with the American Arbitration Association. Two days later, on June 14, 1995, IBM sent the AAA a letter stating its view that the issue was not arbitrable under the Partnership Agreement.

The arbitrability issue is rooted in Exhibit D of the Agreement, which is titled "Major Decisions," and which sets out several categories of significant decisions that may be made by the Partnership and the procedures for reaching them and resolving disputes. Section A of the Exhibit lists five Major Decisions, including "acquiring any land or other real property or any interest therein...." For decisions falling within Section A,

> (a) either Partner ... may withhold its approval for any reason, or for no reason, in its sole and complete discretion, without

---

1. Michael D. Bank, Thomas M. Dusel and Robert J.M. O'Hare, Jr., are named as parties in their capacity as trustees of the Trust. For the sake of convenience, we refer to the appellees simply as "the Trust" throughout the opinion.

2. By this time, the Note had been transferred to a consortium of foreign banks, for whom Citicorp served as agent.

regard to whether the withholding of such approval is unreasonable or arbitrary. . . .

Major Decisions falling within Section C, by contrast, may not be made unreasonably or unilaterally and a deadlock on one of them will trigger the Agreement's arbitration provisions. Section C(13) covers "refinancing of any part or all of the Project."

IBM contends that the Note purchase would constitute the acquisition of an interest in real property, and thus that its opposition to the deal ends the matter. The Trust, however, insists that the purchase is part of a refinancing. Although the letter proposing the transaction refers only to the purchase, the Trust maintains that the proposal embraces the expectation of added capital from IBM (consistent with the $17.5 million obligation) and new third-party financing of the balance. As noted, IBM's objection to a refinancing is arbitrable under the Agreement.

The district court was persuaded that the proposed decision to purchase the Note should be categorized as a refinancing under C(13) of the Agreement. It was influenced, *inter alia*, by the fact that purchase of the mortgage would not result in an "acquisition" of property because the Partnership already owned 404 Wyman Street, and by a belief that no substantive difference existed in this context between the proposed purchase and a restructuring of the original Note, which IBM had conceded would fall within C(13). *See* 915 F.Supp. at 496–98.

Though these points have force, we have concluded that the proposal as presently articulated is not arbitrable.[3] We explain our reasoning in the following section.

## II. *Discussion*

Our review of the district court's grant of the motion to compel arbitration is *de novo*, as it involves the purely legal task of interpreting the Partnership Agreement. *See, e.g., PaineWebber Inc. v. Elahi*, 87 F.3d 589, 592 (1st Cir.1996); *Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 388 (1st Cir.1993).

One difficulty in this case is that, to a point, both parties are right. Notwithstanding the district court's effort to view property ownership in the "everyday" sense, there seems no doubt that the purchase of a mortgage conveys some interest in the mortgaged property to the purchaser. Indeed, even the district court acknowledged that a mortgagee has a legal interest in the property secured by the mortgage. *See* 915 F.Supp. at 497 ("While the mortgagee may technically have legal title to the mortgaged property, the mortgagor is considered the 'owner' of property."). *See also Maglione v. BancBoston Mortgage Corp.*, 29 Mass.App.Ct. 88, 90, 557 N.E.2d 756, 757 (1990); 7 Mass. Jur. § 23:3 at 383 (1993). Thus, if it purchases the Note, the Partnership would acquire at least a technical new interest in the office building, and the proposal therefore could be treated as a "Section A" major decision.

On the other hand, the proposal grew out of refinancing negotiations. The offer by Citicorp and its associates to sell the mortgage back to the Partnership at a substantial discount directly stemmed from the Partnership's efforts to renegotiate the terms of its original financing; the purchase apparently was intended to be part of an alternative method by which the Partnership could restructure and reduce its debt. Thus, in context, the acquisition of a property interest arguably is a step preliminary and subordinate to the effort to refinance.[4] Indeed, IBM recognized both in a hearing before the district court and in its briefs on appeal that a refinancing proposal that included a specified amount of increased equity probably would fall under the refinancing provision.

---

**3.** Our disposition on the refinancing question makes it unnecessary to consider IBM's alternative argument that the Trust is foreclosed from compelling arbitration because it breached its fiduciary duties to the Partnership in causing its affiliate to purchase the Note.

**4.** In fact, we acknowledge the possibility that, in designating the acquisition of an interest in property as a Section A decision on which the part-

ners had complete discretion, the partners were contemplating the purchase of property other than that which the Partnership already "owned." Unlike the district court, however, *see* 915 F.Supp. at 497, we do not believe the Agreement contains such a limitation and therefore do not reject Section A as wholly inapplicable to the acquisition of a mortgage interest.

We need not at this juncture determine the validity of this proposition, for the proposal was not presented as such. Instead of recommending a multi-step refinancing plan that begins with purchase of the mortgage, the Trust has offered a proposal that makes no reference to financing terms. Although certain details of financing in so complex a business environment may need to remain imprecise until the transaction is close to completion, the proposal at the moment lacks *any* refinancing structure.

We acknowledge the Trust's argument that the Agreement fills in crucial gaps through the provision that governs IBM's obligation to contribute capital and another provision that refers generally to the pursuit of financing from third parties or partners. *See* §§ 3.2(c), 3.3.1. Even taking the proposal together with the Agreement, however, the recommendation is without substance; it includes neither the amounts to be sought from lenders nor any other details about possible interest rates, the duration of a mortgage, how soon such financing could or should be obtained, or the nature of the liability to be assumed. We conclude that this defect renders resort to C(13) premature.

In sum, though the Trust's proposal to purchase the mortgage foreshadows a refinancing scheme, we hold that it is as yet without sufficient form to trigger the arbitration provision. Because the Trust has so far proposed no more than a mortgage redemption—which would result, unquestionably, in the acquisition by the Partnership of a greater interest in real property—IBM has veto power under Section A of Exhibit D.

We note that, in so concluding, we have credited neither party's assertions concerning the other's self-serving motives. Our determination that arbitration may not be compelled at this time is based solely on the Trust's failure to submit an actual refinancing plan; we offer no view on the legitimacy of seeking a capital contribution from IBM under section 3.2(c) of the Agreement as part of such a plan.

*Reversed.*