# United States Court of Appeals
## For the First Circuit

---

No. 00-1363
No. 00-1364

THE PAUL REVERE VARIABLE ANNUITY INSURANCE COMPANY, ET AL.,

Petitioners, Appellees,

v.

ARTHUR F. ZANG AND HAROLD P. BECK,

Respondents, Appellants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Lynch, Circuit Judge,
Bownes, Senior Circuit Judge,
and Lipez, Circuit Judge.

---

Glen DeValerio, with whom Michael G. Lange, Alicia Duff, Berman, DeValerio & Pease LLP, Francis A. Ford, James R. Hubbard, and Ricci, Hubbard, Leopold, Frankel & Farmer, PC were on brief, for appellants.

Patrick W. Shea, with whom Adam S. Bozek, Paul, Hastings, Janofsky & Walker LLP, Joseph M. Hamilton, and Mirick, O'Connell, DeMallie & Lougee were on brief, for appellees.

May 3, 2001

**LYNCH, <u>Circuit Judge</u>.** Litigation decisions made by parties have consequences. This case involves strategic decisions made by parties in an attempt to obtain a benefit from a particular ruling; when the court issued a contrary order, those parties attempted to reverse course and get the district court to reach a different result under Rule 60(b), Fed. R. Civ. P. The district court was unsympathetic, and this appeal followed. Arthur F. Zang, Jr., and Harold P. Beck joined a number of other employees in filing state employment actions against six interrelated companies, including The Paul Revere Variable Annuity Insurance Company ("Variable"). Variable, alone among the six companies, is a member of the National Association of Securities Dealers ("NASD"). Based on that membership the companies sought to compel arbitration against seventeen of the former employees by virtue of those employees' registration with NASD. Fifteen of the seventeen former employees then voluntarily dismissed their claims against Variable and continued their claims against the remaining five companies; Zang and Beck remained steadfast and contested the motions to compel arbitration.

The district court dismissed the motions to compel arbitration as to the fifteen employees who no longer had claims against Variable and, after further argument, entered an order

-3-

compelling Zang and Beck to submit their claims against the six companies to arbitration, finding that they both had entered into enforceable arbitration agreements. Faced with this court order, Zang and Beck reversed course and decided to dismiss their claims against Variable. After doing so, they sought relief from the district court's order under Rule 60(b), arguing that the remaining five companies lacked standing on their own to compel arbitration. The district court declined to grant relief from its order, and Zang and Beck now appeal both that denial and the initial order. We affirm both orders.

## I.

In March 1997, Provident Companies, Inc. acquired The Paul Revere Corporation. As a result, Provident combined effective control of its own wholly owned subsidiary, Provident Life & Accident Insurance Company, with control of The Paul Revere Variable Annuity Insurance Company and The Paul Revere Protective Life Insurance Company, two wholly owned subsidiaries of The Paul Revere Life Insurance Company, which, in turn, was a wholly owned subsidiary of The Paul Revere Corporation. In October 1997, a number of general managers for the Paul Revere family of companies, alleging that the termination of their employment was imminent with the completion of the acquisition, filed separate but substantially similar breach of contract

actions in a Massachusetts trial court against all six of these corporate entities.

As a condition of their employment, seventeen of the general managers, including Zang and Beck, had registered with NASD and allegedly thereby promised to abide by NASD's rules and regulations as they were from time to time amended. At the time that the employment actions were filed, the NASD Code mandated arbitration of certain disputes if requested by a NASD member or a person associated with a member.

Based on Variable's membership in NASD, the six companies sought to compel arbitration of the dispute as to those seventeen managers. First, in January 1998 the petitioners filed a motion to compel arbitration in the state court, invoking the NASD Code, and asked the court to stay its hand or dismiss the case pending arbitration. Fifteen of the managers then voluntarily dismissed their actions against Variable (ultimately) with prejudice, removing the only petitioner from their cases who was a NASD member; Zang and Beck retained their claims against Variable.

Faced with the employees' objections to their motions, in July 1998 the companies went to federal district court seeking orders staying the state court actions and compelling arbitration by all seventeen former employees, invoking the

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and resting jurisdiction on diversity, see 28 U.S.C. § 1332(a). In September 1999, the district court denied the petition to compel arbitration as to those fifteen managers who had dismissed Variable on the ground that the remaining petitioners, absent Variable as a defendant, lacked standing under NASD's arbitration protocol. See Paul Revere Variable Annuity Ins. Co. v. Thomas, 66 F. Supp. 2d 217, 223-28 (D. Mass. 1999). This court upheld that denial. See Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 18-26 (1st Cir. 2000).

Unlike the other fifteen managers, instead of dismissing Variable, Zang and Beck opted to retain their claims against Variable and contest the motion to compel arbitration on the merits. They did so, presumably, because their largest dollar value claims were against Variable. Specifically, Zang and Beck (1) contested the existence of a binding agreement to arbitrate, (2) contended that they lacked sufficient notice of the amendments to NASD regulations requiring mandatory arbitration to compel them to arbitrate their employment claims, and (3) argued that, in any case, their claims fell outside the scope of the NASD arbitration provision, both because they did not sell securities and because the NASD Code provided an exception from arbitration for insurance business. In October

-6-

1999, after issuing its orders dismissing the petitions against the other managers, the district court held a status conference to determine the issues in dispute with regard to Zang and Beck. The court ordered further briefing and denied further discovery. On January 7, 2000, the court granted the petitions against Zang and Beck and ordered the parties to arbitrate. Zang and Beck filed a timely appeal.

On March 13, 2000, Zang and Beck dismissed their claims against Variable with prejudice in the state court actions. They then moved the district court to amend its prior orders under Fed. R. Civ. P. 60(b), arguing that since they had dismissed the claims against Variable, none of the remaining parties had standing under the NASD arbitration protocol to compel arbitration. On September 26, 2000, the district court summarily denied Zang and Beck's Rule 60(b) motions for relief from final judgment. Again Zang and Beck filed an appeal, and this court consolidated the two appeals.

## II.

First, Zang and Beck seek relief from the final order of the district court compelling arbitration under Rule 60(b), Fed. R. Civ. P., in light of their subsequent dismissal with prejudice of their claims against Variable. Rule 60(b) affords district courts the equitable power to relieve a party from the

force of a final order or judgment under certain conditions where necessary to serve the ends of justice.[1]  Zang and Beck argue that now that Variable is no longer a party to the ordered arbitration, the remaining parties lack standing to compel arbitration under the NASD arbitration protocol.[2]  Therefore they assert on appeal that Rule 60(b) relief is warranted both under clause (5), because prospective application of the arbitration order is, they say, "no longer equitable," and under clause (6),

---

[1]     Fed. R. Civ. P. 60(b) provides in relevant part:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
* * *
(5) the judgement has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
(6) any other reason justifying relief from the operation of the judgment. . . .

[2]     While respondents argue standing and suggest in passing that Article III standing is lacking, we note that standing in the jurisdictional sense is not at issue.  Not only is jurisdictional standing assessed in terms of the circumstances at the time the action is filed, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 569-70 n.4 (1992) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.") (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989)) (emphasis omitted), but in any case the district court clearly still had jurisdiction at the time it entered the order and, in fact, there remains a live controversy here among diverse parties even after the subsequent dismissal of Variable.  Instead, the question properly conceived is what entities have a right under the NASD arbitration protocols to compel arbitration, and whether that "standing" persists upon the dismissal of Variable.

-8-

because the lack of standing of the remaining parties provides a "reason justifying relief from the operation of the judgment."

This effort faces two formidable hurdles. First, Rule 60(b) relief is "extraordinary relief" reserved for "exceptional circumstances," given the countervailing interest in the finality of such orders. See United States v. One Urban Lot, 882 F.2d 582, 585 (1st Cir. 1989) (internal quotation marks omitted). Moreover, the district court's decision to deny relief under Rule 60(b) is, in turn, reviewed on appeal for abuse of discretion. See Ahmed v. Rosenblatt, 118 F.3d 886, 891 (1st Cir. 1997) ("We will find an abuse of discretion [under Rule 60(b)] only when we are left with a definite and firm conviction that the lower court committed a clear error of judgment . . . ."), cert. denied 522 U.S. 1148 (1998). Zang and Beck fail to clear these considerable hurdles.

Rule 60(b)(6)

The first five subsections of Rule 60(b) allow a court to relieve a party from a final judgment on several specified grounds, such as mistake or excusable neglect, newly discovered evidence, or fraud. See Fed. R. Civ. P. 60(b)(1)-(5). Rule 60(b)(6) provides federal district courts with a residual reservoir of equitable power to grant discretionary relief from a final judgment for "any other reason justifying relief . . .

." <u>See</u> Fed. R. Civ. P. 60(b)(6). This residual catchall provision allows a court to relieve a party from a final judgment where such relief is appropriate to accomplish justice, but the reasons for that relief are not encompassed by the other provisions of the rule. Zang and Beck argue that the fact that the only petitioner with standing under the NASD Code to compel arbitration (Variable) is no longer party to the case justifies relief from the arbitration order issued by the district court. This is not necessarily so, and the district court did not abuse its discretion in denying such relief.

District courts should grant Rule 60(b)(6) motions "only where exceptional circumstances justifying extraordinary relief exist." <u>Ahmed</u>, 118 F.3d at 891, <u>citing</u> <u>Valley Citizens</u> <u>for a Safe Environment</u> v. <u>Aldridge</u>, 969 F.2d 1315, 1317 (1st Cir. 1992). District courts have "broad discretion" to determine whether such circumstances exist. <u>Valley Citizens</u>, 969 F.2d at 1317. The bar for such relief is set high because, as the Supreme Court noted in <u>Ackermann</u> v. <u>United States</u>, 340 U.S. 193, 198 (1950), "[t]here must be an end to litigation someday . . .," and therefore district courts must weigh the reasons advanced for reopening the judgment against the desire to achieve finality in litigation. <u>E.g.</u> <u>Lussier</u> v. <u>Dugger</u>, 904 F.2d 661, 667 (11th Cir. 1990); <u>see also</u> 11 Wright et al.,

-10-

<u>Federal Practice and Procedure</u> § 2857, at 256-57 (West 1995).

The reasons for relief advanced by Zang and Beck are not so compelling as to require the district court to grant their Rule 60(b) motion. The decision to persevere in their claims against Variable upon the filing of the petitions to compel arbitration in federal court was a "free, calculated, and deliberate" choice. <u>Ackermann</u>, 340 U.S. at 198. The only relevant change in circumstance since the entry of the arbitration order is Zang and Beck's also "free, calculated, and deliberate" choice to dismiss Variable from their state court actions. Ordinarily, the discretionary power granted by Rule 60(b)(6) is not for the purpose of relieving a party from such "free, calculated, and deliberate" choices made as part of a strategy of litigation. <u>E.g.</u> <u>id.</u> ("free, calculated, deliberate choices are not to be relieved from"); <u>see also</u> <u>id.</u> at 200 (stating that "by no stretch of the imagination can the voluntary, deliberate, free, untrammeled choice by the petitioner not to appeal" compare with the "exceptional circumstances" found in other cases); 11 Wright et al., <u>supra</u> § 2864, at 359. The law presumes that parties will make choices to protect their legal interests, even though those choices may at times involve a calculated risk. Where a party makes a considered choice, though it may involve some calculated risk,

-11-

he "cannot be relieved of such a choice because hindsight seems to indicate to him" that, as it turns out, his decision was "probably wrong." Ackermann, 340 U.S. at 198.

Zang and Beck are correct that the facts of Ackermann are different -- that case involved a decision not to pursue an appeal. But still, the policy embodied in Ackermann applies with equal force in this case. Zang and Beck persisted in their claim against Variable, cognizant of the risk that this would lead to mandatory arbitration. Indeed, by the time of the October 1999 status conference, the September dismissals of the petitions against the other fifteen managers made clear that it was reasonably likely that this consequence could be avoided by dismissing Variable. Nonetheless Zang and Beck continued to litigate against the petitions to compel arbitration rather than dismissing Variable, gambling that they could defeat those petitions on the merits. Only upon the district court's order compelling arbitration did Zang and Beck opt to dismiss Variable, hoping thereby to evade the arbitration order.

Zang and Beck chose to retain their claim against Variable, fully aware that this choice increased the likelihood that they would be compelled to arbitrate their claims. Now that this likelihood has been borne out, they cannot reverse the consequences of their decision after the fact by suddenly

changing course and then asking the district court to correct for their earlier improvident choice. Rather, the rule contemplates that a party will take the legal steps necessary to protect his own interests, and instead acts to relieve a party from extraordinary predicaments where, because of exceptional circumstances, the party would have been unable to do so. The district court did not abuse its discretion in denying relief on the grounds here.

Rule 60(b)(5)

On appeal, Zang and Beck also argue that their Rule 60(b) motion falls within the fifth clause of the rule, which allows a court to relieve parties from judgments with prospective effect where, inter alia, "it is no longer equitable that the judgment should have prospective application." Fed. R. Civ. P. 60(b)(5). Petitioners contend that Zang and Beck failed to argue adequately before the district court that their case fell within the scope of this provision, and that therefore the argument is waived. Zang and Beck respond that they did raise the argument, and in any event they say that motions under Rule 60(b) need not specifically reference a particular subsection.

We need not reach the waiver question because it is clear that Zang and Beck do not qualify for relief under Rule 60(b)(5). As an initial matter, Zang and Beck's claims fall far

outside the cases with which the provision is particularly concerned, such as institutional reform litigation, where, because the decree involves the long-term supervision of changing conduct or conditions, its prospective requirements may be rendered inappropriate by unforeseen changes in circumstance subsequent to the entry of the order. See, e.g., Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 379 (1992) (suggesting a flexible standard is required for decrees that involve "the supervision of changing conduct or conditions" and thus of necessity are "provisional and tentative").

Even if we were to indulge in respondents' favor the argument that the arbitration order falls within the scope of Rule 60(b)(5), qualifying for relief under this provision requires a clear showing of inequity. Historically, the standard for relief from a binding decree was quite high. E.g. United States v. Swift & Co., 286 U.S. 106, 119 (1932) ("No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. Nothing less than a clear showing of a grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed . . . ."); see also 11 Wright et al., supra, § 2863, at 340-41. It is true the Supreme Court has

-14-

acknowledged that greater flexibility is required in considering requests to modify institutional reform consent decrees. See Rufo v. Inmates of Suffolk County Jail, 502 U.S. at 383. Nonetheless this court has since required a considerable showing to modify decrees in private contractual disputes that lack substantial bearing on the public interest. See Alexis Lichine & Cie v. Sasha A. Lichine Estate Selections, Ltd., 45 F.3d 582, 586-87 (1st Cir. 1995) (describing the continuum of cases in which Rule 60(b)(5) is invoked). In considering the equities of such a modification, a court should look to such factors as the circumstances leading to the decree, the level of hardship on the "burdened" party, and the extent to which the change in circumstances falls outside of those contemplated at the time the decree was issued. The order here resolved a contractual dispute between private parties with tenuous and tangential bearing at best on the public interest; the hardship of mandated arbitration is limited; and the change of circumstances lay fully within the control of (and, indeed, was caused by) the parties requesting relief. Such facts fail to demonstrate the type of inequity to warrant Rule 60(b)(5) relief.

Zang and Beck argue that a change in facts justifying relief from the prospective effect of a final order under Rule 60(b)(5) need not be "unforeseen and unforeseeable." This

-15-

assertion is correct.  See Rufo v. Inmates of Suffolk County Jail, 502 U.S. at 385.  From this assertion Zang and Beck reason by implication that Rule 60(b)(5) relief is appropriate here, where the circumstances at issue were within their control both before and after the issuance of the district court's order. But there is considerable distance between facts that were completely unforeseen when an order was issued and those circumstances that were in both the control and contemplation of the parties, both before and at the time of the judgment; the line was not extended so far in Rufo.  Cf. id. ("Litigants are not required to anticipate every exigency that could conceivably arise during the life of a consent decree.  Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree.").  Rather, the policy underlying Ackermann -- that parties must live with the consequences of freely made, calculated decisions reached for strategic reasons in the course of litigation --  applies with equal force in the context of Rule 60(b)(5).  See, e.g., Valentine Sugars, Inc. v. Sudan, 34 F.3d 320, 322 (5th Cir. 1994) (holding that Rule 60(b)(5) relief is not appropriate where the party not only foresaw the changed conditions but created them).

On these circumstances, Zang and Beck are not entitled

-16-

to relief from the district court's order under either subsection (5) or (6) of Rule 60(b). They are not free to test the waters, fully litigating the merits of the arbitration petition in the district court, and then, displeased with the outcome, to escape the consequences of this choice by shifting to a different course after the fact. The orders are binding, and the circumstances are not so exceptional or unforeseen as to compel the district court to relieve the parties from their force. Any "injustice" wrought by these orders, if it exists at all, is not so extreme -- Zang and Beck retain a right to pursue their claims on the merits in the pending arbitration proceedings and receive compensation if they prevail, even if this is not their preferred forum or format. Finding no abuse of discretion, we affirm the district court's denial of the Rule 60(b) motion.

## III.

Zang and Beck also raise four challenges to the district court's initial determination granting the petition and ordering arbitration. First, Beck contends that petitioners failed to present sufficient evidence of the existence of any agreement to arbitrate. Next, Zang and Beck argue that there was no knowing and voluntary agreement to mandatory arbitration. Zang and Beck also contend that they were denied discovery about

material issues of fact in dispute regarding the continued standing of Variable to compel arbitration. Finally, Zang and Beck contend that even if the NASD arbitration provisions bound them to arbitrate some disputes, the insurance business exception in the NASD Code exempted these particular disputes from mandatory arbitration. We review the district court's grant of the motion to compel arbitration de novo. See Bank v. Int'l Bus. Machines, Inc., 99 F.3d 46, 48 (1st Cir. 1996).

The Existence of an Agreement to Arbitrate

First, Beck claims that the petitioners failed to prove the existence of any signed agreement on his part in which he agreed to arbitration. NASD records indicate that Beck's registration was filed and approved on November 21, 1968. However, the NASD has not located an actual registration form signed by Beck in 1968. Nevertheless, the district court concluded that Beck had signed the relevant forms, relying on secondary evidence. Petitioners filed with the court an affidavit from a NASD official containing the following assertions: (1) that NASD records show that Beck's registration was both filed and approved on November 21, 1968; (2) that when Beck registered in November 1968, NASD required registrants to sign a registration application as part of its regular business practice; and (3) that despite reasonable efforts, NASD had

-18-

failed to locate Beck's application forms. The parties do not dispute that the relevant registration form at the time was Form A-300, and petitioners also introduced a copy of Form A-300. Beck states only that he does not recall signing the application, and does not contend that the form was lost in bad faith or contest that he was in fact registered.

On this record, the district court concluded that Beck had signed and submitted Form A-300, in which he agreed to be bound by any NASD rules as they existed at the time he registered and "as they may from time to time be adopted, changed, or amended."[3] As a result, the district court concluded that Beck had agreed to be bound by the NASD rules in effect when he filed suit in October 1997, which at the time required arbitration of employment disputes.

On appeal, Beck argues that the district court erred in finding this evidence sufficient to conclude that he had actually signed Form A-300. Beck says that the absence of any testimony regarding personal knowledge that Beck had signed the form, the failure to provide any explanation for the absence of the form from the NASD's files, the fact that the NASD affidavit

---

[3] Petitioners did produce the form Zang signed when he registered in 1974, Form B-301, in which he likewise agreed to be bound by all NASD regulations as they existed and are "adopted, changed, or amended."

contains the admittedly false statement that Beck's application contained an express arbitration provision, and the fact that the one partial registration document NASD did produce regarding Beck -- the face page of an amended registration form, Form U-4, from 1996 -- did not contain Beck's signature but instead that of another Variable employee, all militate against the district court's conclusion.

The district court's reliance on secondary evidence is appropriate. See, e.g., Bituminous Cas. Corp. v. Vacuum Tanks, Inc., 975 F.2d 1130, 1132 (5th Cir. 1992); Fed. R. Evid. 1004, advisory committee's note ("if failure to produce the original is satisfactorily explained, secondary evidence is admissible"). In particular, testimony regarding a regular business practice can be sufficient to establish the existence and content of missing business documents. See, e.g., Simas v. First Citizen's Fed. Credit Union, 170 F.3d 37, 52 (1st Cir. 1999) (relying on testimony to establish the existence of missing loan application); Fireman's Fund Ins. Co. v. Glass, No. 94 Civ. 7375 (WK), 1997 WL 289858, at *3 (S.D.N.Y. May 30, 1997) (relying on evidence of custom and practice to use standard engagement letter to establish the existence and terms of missing engagement letters). The fact that the affidavit erroneously stated that the application Beck signed contained an express

arbitration clause is not directly contradictory, as there is no dispute that if Beck signed an application, it was Form A-300, and the contents of that form are not in question. Similarly, the fact that the single page found of the incomplete 1996 amended registration form did not contain Beck's signature is not persuasive in challenging NASD's business practices, as the one page found was the first page of a three page application form, and not the one on which NASD would have required an actual signature.

It is undisputed that Beck was in fact registered with NASD in 1968, and given the convincing evidence that he would not have been registered without a signed Form A-300 in light of NASD's business practices, the district court was not in error to conclude that he had in fact signed and submitted the form.

Voluntary and Knowing Agreement to Mandatory Arbitration

Zang and Beck also contend that even if they at one time agreed to be bound by NASD rules as they were "adopted, changed, or amended," this agreement is not sufficient to compel them to submit to mandatory arbitration where the documents they signed are silent as to arbitration. Agreements to arbitrate, they say, must be knowing and voluntary, and the forms they (allegedly) signed did not contain any mandatory arbitration provisions, much less one regarding employment disputes.

-21-

Zang and Beck rely heavily on this court's opinion in Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1 (1st Cir. 1999), to argue that the agreements that they signed cannot serve to compel arbitration in the absence of proof of more direct awareness of and consent to the arbitration requirement. However, Rosenberg is different from this case in two respects. First, Rosenberg was concerned only with compelling arbitration in the context of federal employment discrimination claims and relied in part on congressional history expressing particular concerns on the issue of arbitration arising out of the strong public policy against such discrimination. Id. at 17-21. By contrast, this case involves a straightforward contract dispute that does not raise the public policy concerns addressed by statutory bars to employment discrimination. Moreover, the defendant in Rosenberg, Merrill Lynch, had agreed expressly to familiarize its employees with the governing regulations, and had not notified the plaintiff of the mandatory arbitration provision. Id. at 19. Here Variable made no such promise,[4] and therefore Rosenberg is inapposite on

---

[4] While Zang and Beck argue that NASD Rule 3010 reflects a commitment by Variable to notify them of changes in the NASD Code, this is simply not the case. Rather, Rule 3010 requires Variable to supervise its employees to ensure that they do not violate securities laws, regulations, or NASD rules, and in this context, to keep employees abreast of such regulations to ensure compliance. Rule 3010 does not reach the adoption of mandatory

-22-

this point as well. Other courts have compelled arbitration on similar agreements to abide by rules as modified in the future. See, e.g., R.J. O'Brien & Assoc. v. Pipkin, 64 F.3d 257 (7th Cir. 1995); Geldermann v. CFTC, 836 F.2d 310 (7th Cir. 1987). Zang and Beck are professionals who agreed to abide by the rules and regulations of a professional organization to which they belonged; in the absence of any commitment by the petitioners to inform them of rule changes, they cannot plead ignorance of rules with which they have agreed to comply to escape their effect.

The Denial of Discovery

Zang and Beck also challenge the district court's denial of discovery regarding whether petitioners had cancelled their NASD registrations through Variable before the accrual of their employment claims. Petitioners argue that the discovery request was untimely and therefore waived; Zang and Beck respond that they had a right to test the legal sufficiency of the petition before pursuing factual disputes.

We need not resolve the question. The only "disputed" factual issue raised by Zang and Beck on appeal is the alleged transfer of Zang and Beck's registration with NASD from Variable

---

arbitration for employment disputes, which falls beyond the area of securities regulation with which Rule 3010 is concerned.

to Washington Square Securities, Inc. The district court denied discovery on this question. The essence of Zang and Beck's theory is that if they were registered through Washington Square and not through Variable, then Variable lacked standing to compel arbitration. However, NASD records before the district court establish that Zang and Beck were still registered with NASD through Variable at the time of the termination of their employment. Thus any question regarding their alleged (additional) registration through Washington Square is immaterial.

The Insurance Business Exception

Zang and Beck's final argument is that their employment claims against the petitioners fall outside the scope of the NASD arbitration provisions because the NASD Code excepts from arbitration "disputes involving the insurance business of any member which is also an insurance company." NASD Code § 1. The overwhelming weight of authority on the issue holds that employment with an insurance company alone is not enough to trigger the exception unless the pending claim is entangled with the company's insurance business to a substantial degree, and we hold that is the correct rule. See, e.g., Armijo v. Prudential Ins. Co. of America, 72 F.3d 793, 800 (10th Cir. 1995) (claims of employment discrimination against insurance company did not

involve insurance business of defendant); <u>Cular</u> v. <u>Metropolitan Life Ins. Co.</u>, 961 F. Supp. 550, 558 (S.D.N.Y. 1997) (breach of contract and tort claims in the case were "garden-variety" employment disputes not covered by the insurance business exception). Since this dispute simply involves the obligations of the companies to the managers under their employment contracts and does not substantially implicate the conduct of insurance business, the exception is inapposite.

## IV.

We affirm the district court's orders compelling arbitration and denying the Rule 60(b) motion for relief from that order.

So ordered.